**Robert D. GREEN, et al., Appellants,**

v.

**CITY OF LUBBOCK, et al., Appellees.**

**No. 9292.**

Court of Appeals of Texas, Amarillo.

Nov. 30, 1981.
Rehearing Denied Jan. 27, 1982.

E. Warren Goss & Associates E. Warren Goss, Kent Hale, Lubbock, for appellants.

John C. Ross, Jr., City Atty., William M. McKamie, Asst. City Atty., Lubbock, for appellees.

Before REYNOLDS, C. J., and DODSON and COUNTISS, JJ.

COUNTISS, Justice.

This initiative and referendum case presents one primary question: when amendments to the charter of a home rule city are proposed by initiative, in compliance with article 1170, Tex.Rev.Civ.Stat. Ann. (Vernon Supp. 1980),[1] is the city required to submit the amendments to the electorate before it can ask the courts to determine whether the amendments are legislative in character and have not been withdrawn from the field in which the initiatory process is operative?[2] The trial court, following the principles stated in *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645 (1952), held it could make such a determination before the amendments were submitted to the electorate, and did so. Because we have concluded that *Coalson v.*

---

1. As pertinent here, article 1170, Tex.Rev.Civ. Stat.Ann. (Vernon Supp. 1980), states:

   *When the governing body desires to submit amendments to any existing charter, said body* may on its own motion, in the absence of a petition, and *shall, upon receiving a petition signed by qualified voters in such city, town or political subdivision in number not less than five per cent (5%) thereof or 20,000 signatures, whichever is less, submit any proposed amendment or amendments to such charter.* The ordinance providing for the submission of such amendment or amendments shall require the submission

   thereof at an election to be held not less than thirty (30) days nor more than ninety (90) days after the passage of said ordinance. * *. [Emphasis added.]

2. It is settled that a charter amendment is invalid if it is not legislative in character or contains a subject matter withdrawn from the field in which the initiatory process is operative. *See* discussion in *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645 at pp. 648–49 (1952). The issue in the present case is when those questions can be litigated.

*City Council of Victoria,* 610 S.W.2d 744 (Tex.1980), decided after the trial court rendered its judgment, requires a different result, we reverse, render in part and remand in part.

All parties agree that the pertinent facts are undisputed. Robert D. Green and the other appellants (hereafter "the Citizens") circulated petitions calling for three amendments to the charter of appellee City of Lubbock (hereafter "the City").[3] After obtaining numerous signatures, the Citizens presented the petitions to the governing body of the City on July 12, 1979, and asked the City to submit the amendments to the electorate for approval or disapproval.

On July 26, 1979, the City Secretary informed the appropriate City officials that the petitions contain the signatures of 5% of the qualified voters of the City and meet the requirements of article 1170, Tex.Rev. Civ.Stat.Ann. (Vernon Supp. 1980). On the same day, the governing body of the City decided not to order an election. Instead, it instructed counsel to file a declaratory judgment suit, article 2524–1, Tex.Rev.Civ. Stat.Ann. (Vernon 1965), in order to ascertain whether the proposed amendments are legislative in character and whether their subject matter has been withdrawn from the field in which the initiatory process is operative.

After the declaratory judgment suit was filed, the Citizens countered with a mandamus action, Tex.Rev.Civ.Stat.Ann. art. 1914 (Vernon 1964), seeking to compel the City to call the election. Included in the pre-trial skirmishing was an unsuccessful attempt by the Citizens to obtain dismissal of the City's declaratory judgment suit because of the absence of a justiciable controversy. After various other pre-trial matters were resolved, the City and the Citizens each moved for summary judgment and each responded to the opposing party's motion.

The trial court granted the City's motion and, after reviewing the proposed amendments, concluded, among other things, that the amendments are administrative rather than legislative in character and have been withdrawn from the field in which the initiatory process is operative. It denied the Citizens' motion, holding that the City is not required to submit the proposed charter amendments to the electorate.

In this court, the Citizens present a two-pronged attack on the judgment. In their first three points of error, they attack the trial court's refusal to dismiss the declaratory judgment suit, its granting of summary judgment in favor of the City and its denial of summary judgment in the Citizens' favor. In their last three points, the Citizens discuss the merits of the trial court's conclusions that the amendments are not legislative and have been withdrawn from the initiatory process. We agree with the Citizens' first three points. For reasons stated hereafter, we cannot discuss the validity of the arguments advanced in the last three points because the matters presented are not ripe for resolution.

All of the issues in this case are controlled by the recent Texas Supreme Court decision in *Coalson v. City Council of Victoria,* 610 S.W.2d 744 (Tex.1980). The fact situations in the two cases are almost identical. Coalson and other registered voters of the City of Victoria circulated petitions calling for a tax related amendment to the charter of their city. The Victoria City Secretary certified that the petition complied with article 1170, Tex.Rev.Civ.Stat.

---

3. The proposed amendments are all property tax related. They read as follows:

   1. The annual ad valorem taxes levied by the governing authority of the City government shall not exceed the rate of $1.12 per $100.00 valuation of taxable property.
   2. The annual ad valorem taxes levied by the governing authority of the City government shall not exceed 60% of the fair market value of the property as the assessed valuation of property subject to tax.

3. The annual ad valorem taxes levied by the governing authority of the City government shall not be increased on the basis of an increase in the rate of evaluation of taxable property nor on the assessed valuation of property subject to tax, from the preceding tax year, without first securing approval of said increase at an election submitting said proposed increase to the voters of the City of Lubbock. Said increase, if any, requiring a majority vote for its approval.

Ann. (Vernon Supp. 1979). The Victoria City Council voted, however, not to place the proposed charter amendment on the ballot with other charter amendments already scheduled for election. Instead, it instituted a declaratory judgment suit seeking an adjudication that the proposed charter amendment had been withdrawn from the field in which the initiatory process is operative, relying in part on article 8, § 21 of the Texas Constitution, article 7244c, Tex.Rev.Civ.Stat.Ann. (Vernon Supp. 1980), and the Property Tax Code, Acts 1979, 66th Leg., p. 2217, ch. 841.[4] The Coalson group then sought a writ of mandamus from the Texas Supreme Court ordering the appropriate authorities in Victoria to submit the proposed charter amendment to the public for a vote. The Victoria authorities contended, in response, that the writ should not issue because of its pending declaratory judgment suit.

The Supreme Court ordered issuance of the writ of mandamus. In discussing whether the Coalson group was entitled to the writ, it stated that they "have complied with Tex.Rev.Civ.Stat.Ann. art. 1170 which entitles them to the relief they seek." 610 S.W.2d at 745–46. In its final paragraph discussing the pertinent substantive law the court stated:

The initiative process, which article 1170 authorizes, affords direct popular participation in lawmaking. The system has its historical roots in the people's dissatisfaction with officialdom's refusal to enact laws. 1 Bryce, The American Commonwealth (1st ed. 1888). It is an implementation of the basic principle of Article I, Section 2, of the Texas Bill of Rights: "All political power is inherent in the people...." This court stated in *Taxpayer's Ass'n of Harris County v. City of Houston*, 129 Tex. 627, 105 S.W.2d 655, 657 (1937), that "the power of initiative and referendum ... is the exercise by the people of a power reserved to them, and not the exercise of a right granted," and that "in order to protect the people

of the city in the exercise of this reserved legislative power, such charter provisions should be liberally construed in favor of the power reserved." *See also Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645 (1951). [Italics by the Court.] *The City Council's duty is clear, and its compliance with the law is ministerial in nature. The City Council's refusal to submit the proposed amendments to the vote of the people thwarts not only the legislature's mandate but the will of the public.* [Emphasis added.]

610 S.W.2d at 747.

In response to Victoria's argument that it should first be allowed to determine whether the subject matter of the proposed charter amendment was withdrawn from the field in which the initiatory process is operative, the Supreme Court stated:

The declaratory judgment action was prematurely filed. The election process had been lawfully put in motion and the declaratory judgment action was improperly used as a vehicle to frustrate the process. [Citing cases.]

The declaratory judgment suit, at this stage of the proceedings, seeks an advisory opinion. The election may result in the disapproval of the proposed amendment. District courts, under our Constitution, do not give advice nor decide cases upon speculative, hypothetical or contingent situations. [Citing cases.] The election will determine whether there is a justiciable issue, at which time the respondents' complaints against the validity of the initiatory process under article 1170 may be determined by the trial court.

610 S.W.2d at 747.

■ When the principles of the *Coalson* case are applied to the facts of this case, we reach the same result. All parties agree that the Citizens' petitions comply with article 1170 and the City does not urge any defect of form in the petitions. Thus, the

4. The City relies on the same provisions in the declaratory judgment suit now before this court.

City having refused to call the election, the Citizens are entitled to the relief they seek and the trial court abused its discretion in refusing to issue the writ of mandamus. *Alice National Bank v. Edwards*, 408 S.W.2d 307, 311 (Tex.Civ.App.—Corpus Christi 1966, no writ).

■ Additionally, the declaratory judgment suit is premature. Until at least one of the proposed amendments has been approved by the voters, the declaratory judgment suit seeks an advisory opinion, which our district courts do not give. Thus, the trial court should have sustained the Citizens' motion to dismiss the declaratory judgment suit because of the absence of a justiciable controversy. *Firemen's Ins. Co. of Newark, N.J. v. Burch*, 442 S.W.2d 331, 333 (Tex.1968).

The City places primary reliance on *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645 (1952), and has obviously structured its suit around that case. *Glass* held that the court could and should determine whether a proposed ordinance of the City of Austin, presented under that City's charter provision for initiative and referendum, was legislative in character and had not been withdrawn from the initiatory field, before Austin could be required to hold an election. The principles stated in *Glass* appear to be in conflict with the principles stated in *Coalson*. However, in *Coalson*, the Supreme Court cited *Glass* for an ancillary proposition and did not overrule it, so we must presume that the Court did not perceive a conflict. We can only conclude that the two-step examination used in *Glass*, under a city charter initiative and referendum provision, is not to be used in an article 1170 case. Instead, when article 1170 is satisfied, the election is held first and questions concerning the amendments are litigated later. Because this is an article 1170 case with facts almost identical to the facts in *Coalson*, we must follow *Coalson*.

Points of error one, two and three are sustained. We do not reach or discuss the Citizens' fourth, fifth and sixth points of error because they present matters not ripe for resolution at this time.

The judgment of the trial court is reversed. Judgment is here rendered that the City's declaratory judgment suit be dismissed. The Citizens' mandamus suit is remanded to the trial court with instructions to grant the writ of mandamus as prayed for by the Citizens.

ON MOTION FOR REHEARING

In its motion for rehearing the City contends, by its first two assignments of error, that we erred (1) in overruling the City's pre-submission motion to dismiss this appeal for failure of the Citizens to timely file their brief, and (2) in granting the Citizens' pre-submission motion to extend the time for filing their brief. We note that the City did not present either contention by cross-assignment of error in its brief filed after our ruling on the foregoing motions. We will, however, dispose of the assignments on their merits.

■ When an appellant fails to file a brief within the prescribed time, the appellate court "may dismiss the appeal for want of prosecution, unless reasonable explanation is shown for such failure and ... appellee has not suffered material injury thereby." Rule 415, Tex.R.Civ.P.[5] In a Rule 21c case, the Supreme Court defined a reasonable explanation as "any plausible statement of circumstances indicating that failure to file ... was not deliberate or intentional, but was the result of inadvertence, mistake or mischance." *Meshwert v. Meshwert*, 549 S.W.2d 383, 384 (Tex.1977). *See also Wolters v. Wright*, 623 S.W.2d 301, 303 (Tex.1981).

We are satisfied the same definition is applicable under Rule 415. We are also satisfied, as we were when we originally ruled on the motions in question, that the Citizens reasonably explained their failure to timely file their brief and that the City did not suffer material injury.

The brief was tendered for filing four days late. After being advised that the

---

**5.** All references to rules are to the Texas Rules of Civil Procedure.

brief was late, the Citizens' counsel stated, in considerable detail and under oath, the circumstances that led to the late tender. The primary problem occurred because there was a misunderstanding between the Citizens' counsel and the clerk's office of this court concerning the due date of the brief. It was apparent that the failure to timely file the brief "was not deliberate or intentional, but was the result of inadvertence, mistake or mischance." *Meshwert v. Meshwert*, 549 S.W.2d 383, 384 (Tex.1977).

The Citizens' motion also stated that the City would not be prejudiced by the extension. The City did not rebut that assertion or demonstrate any material injury that would flow to it from the granting of the motion.

Thus, the Citizens satisfied the requirements of Rule 415 and we permitted the filing of the brief, declining the City's invitation to dismiss the appeal. The City has not convinced us in its motion for rehearing that we were in error in doing so.

 We also observe that, under the last sentence of Rule 415, the appellate court can decline to dismiss the appeal and "shall give such direction to the cause as it may deem proper." We construe the sentence to give us discretion to decline to dismiss an appeal even if no brief is tendered or no reasonable explanation is offered. Thus, regardless of the reasonableness of the Citizens' explanation, we were not prohibited from considering and disposing of the case on the merits.

We have reviewed all other assignments of error and arguments in the City's 95-page motion for rehearing. We are satisfied, however, that our disposition of the case is correct.

The motion for rehearing is overruled.